Good morning. Good morning. I'm I'm muted. Good morning, Judge Rovner. We can hear you okay. Good. Okay. Thank you. Good morning. Our first case of the day is Appeal Number 22-2342, and it is Thomas Walker v. John Baldwin and Mr. Halpern. Yes. Yes. Thank you, Your Honor. You may begin whenever you are ready. May it please the court. The Supreme Court in Tanzan v. Tanvir held that the plain language of the Religious Freedom Respiration Act clearly authorizes individual capacity claims for damages. That holding applies here to the Religious Land Use and Institutionalized Persons Act, RLUIPA, because RFRA and RLUIPA share an identical text, they address the same subject, and because each of Tanzan's plain meaning observations applies with even greater force to RLUIPA than to RFRA. Congress created a damages remedy in these two statutes precisely for cases like this one. The defendants harassed my client repeatedly, they locked him in solitary, and they threatened him with a tactical unit, all in an effort to coerce him into violating a religious oath that he had honored for a half decade. Tanzan teaches that damages are appropriate relief on these facts because damages are the presumptive remedy when a state official violates federal rights, and because here, damages are the only form of relief that can even begin to remediate the injury to which Thomas Walker was subjected. Tanzan therefore overrules this court's contrary decision in Nelson v. Miller, and it firmly establishes that state officials, like federal officials, can be held accountable when they brazenly violate prisoners' religious freedom rights as they did here. Mr. Heldman, Tanzan. Go ahead, Judge Robler. Okay, well, this case obviously doesn't present a sovereign immunity concern. But it does present the spending cost concern that states and their officials have clear notice that their failure to comply with the conditions that are placed on federal funds may expose individual state officials and employees to liability for an award of monetary damages. Okay? With me so far? Indeed, yes. Defendants appear to equate the sovereign immunity concern that was an issue in Sossaman with the spending cost concern that's presented here in terms of the need for especially clear notice. Do you agree that the two concerns are equivalent in terms of the degree of notice required? Yes, Your Honor. Because RLUIPA is a spending clause statute, Congress did need to speak clearly to authorize damages. But Tanzan teaches that Congress did speak clearly because all of the traditional tools of statutory construction point in the same direction and in favor of damages. The text, the context, the history, the purpose all cut decisively in favor of a remedy. That is why the other side does not make a single argument with reference to the text of RLUIPA to support their no damages, no remedy view of the statute. And if I could, I'm happy to walk through the ways in which Congress made its intention abundantly clear in the statute. That would be great because, you know, the spending power does permit Congress to regulate in areas that it's otherwise limited and enumerated powers wouldn't permit. So, you know, to that extent, I, well, okay. Don't Sossaman's cautions about sovereign immunity and the need for absolute clarity apply equally here? Not quite, Your Honor. Sossaman did not hold that this statute, the phrase appropriate relief, is categorically ambiguous. It held that that phrase is context dependent. And in the context of suits against sovereigns, damages are presumptively inappropriate by virtue of sovereign immunity. But this is an individual capacity case. And Tansen teaches us that damages are plainly appropriate in individual capacity cases. Now, Your Honor is correct. But look, even Tansen, even Tansen says that the meaning of appropriate relief is context dependent. So if part of the context here is the limits of congressional spending power and the need for clear notice, would that suggest that if Congress wants to hold individual state employees liable for money damages, when the conditions on use of federal funds are violated, it has to make that absolutely clear without question. In other words, spell it out and make explicit that, quote, appropriate relief, include an award of monetary damages. No, Your Honor. The test is not a magic words test. And the same is true of the abrogation of sovereign immunity. The methodological question is whether the statute is amenable to more than one plausible construction under the traditional rules of statutory interpretation. If it is, then the spending clause's clear notice principle breaks the tie in favor of the recipient. But here, Tansen teaches us that this statute is amenable to only one plausible construction under all of the ordinary tools of statutory interpretation. That's the methodology that this court employed in Eagleson. It's the methodology that the Supreme Court employed in Richland Security Services versus Chertoff. It's the methodology that the Supreme Court deployed in FAA versus Cooper. There is no magic words requirement. The key is that all of the traditional indicia of meaning here point in the same direction. And I'm happy to walk through why that is the case. Before you do that, Mr. Halberg, I want to ask this question to the extent you answer it together. My focus is on the spending clause as well. And I don't think ‑‑ I think Tansen is a separate issue. Tansen talks about the statutory construction and the meaning of appropriate relief. But Tansen doesn't say anything about the authority under the spending clause and whether or not Congress, separate from the notice issue that Judge Rovner has raised, the authority of Congress to enter and pass this type of statute under the spending clause. And we addressed that in Nelson. You're relying on Sabury to say that we do have ‑‑ that Congress does have that authority. But Sabury was in place before Nelson. So my question for you is, what has changed since Nelson that would clarify that or show that Congress had the authority under the spending clause to pass this statute that would impose liability on third parties? I think it's vitally important that Nelson did not decide on the constitutional question. It avoided that question. That's true. I give you that. But the language in Nelson made pretty clear what the court thought about authority under the spending clause. That's fair, Your Honor. But I do think the holding was an avoidance holding. I would agree with that. But it doesn't avoid the question of what has changed since Nelson or what are you relying on for the authority under the spending clause? Sure. So let me just say that Nelson's avoidance of the question was a prescient exercise in judicial humility because in that case the parties did not brief the necessary and proper clause. They didn't brief Sabury and they didn't brief the many other spending clause statutes in which Congress imposes liability on nonrecipients. We are now making those arguments here. The spending clause in conjunction with the necessary and proper clause to prevent employees from interfering with the execution of its spending clause conditions. That argument and that tandem of constitutional provisions was not before this court in Nelson. And that is why I say it was a prescient exercise in judicial humility for this court not to hold that Congress' category lacks an authority that is so vital for Congress to actually ensure that its spending clause conditions are being honored and not undermined. And I think this case is case in point. Congress needs to have the authority to impose liability because otherwise state employees, prison officials can violate this statute with impunity. So do you think the Ninth Circuit got it wrong because we would be creating a circuit split with the Ninth Circuit if we agree with you? I think that there's a way to read Wood v. Yorty to treat that as dicta but I do think that the Ninth Circuit was incorrect. The Ninth Circuit said that the liability rules do not further reluctance objectives under the spending clause. That is just manifestly, respectfully not correct. As this case shows and as other cases show, without a damages remedy, there is no deterrence and the statute becomes broadly unenforceable in the prison system whenever prisoners are released. Well, the Ninth Circuit said more than that though. They said that they distinguished SABRI on the grounds that it involved the very federal funding which was at issue in the statute. That's right, but I think that the principles that SABRI articulates go beyond the bribery context and I don't even think that's an entirely correct characterization of SABRI because on one of the counts, the defendant in SABRI, the petition before the Supreme Court, was convicted of paying money to receive a certain land use permit from the government. So the only money at issue in that case was the private citizen's money and in return they were receiving permit allowances from the government.  Does it matter that that involved a public official and a private citizen whereas here we have two private citizens? I don't think so. If anything, I think this case is easier than SABRI because we have an employee of the funding recipient who knowingly acquiesces in RLUIPA's remedial regime when they accept employment with that funding recipient and in that respect, RLUIPA is not unique. Congress frequently imposes liability on employees of funding recipients to ensure that its spending clause conditions are being honored and not undermined by those employees. It did that in EMTALA, the Emergency Medical Treatment and Active Labor Act, and it did that in Title X, the statute at issue in Russ v. Sullivan. Now again, I say that this court in Nelson v. Miller was prescient to exercise judicial humility and not decide the question because none of those statutes were before the court in that case and the parties did not even brief the fundamental point about the conjunction between the spending clause and the necessary and proper clause and the way that that grants Congress the authority to ensure that employees are not undermining the substantive conditions in the statute. And I see that I'm nearly at my rebuttal time, but if I could just make a few quick points about the statutory text. So we know that appropriate relief includes damages under TANZEN because damages are the presumptive remedy when a state official violates federal rights and in a case like this one where it's damages or nothing, appropriate relief means damages. It doesn't mean nothing. Congress would not have used the formulation appropriate relief if it meant to create no remedy at all. And one way we know that is that Section 4 of RLUIPA authorizes the United States to seek declaratory or injunctive relief but not damages. That suggests that appropriate relief sweeps broader and was meant to include the traditional range of remedies that are available against defendants in their individual capacity. And as Professor Laycock points out, if this were an injunction-only statute, there would have been no need to define government to include official or any person acting under color of state law because an injunction against the institution runs necessarily against those individuals. That all would have been surplusage if this were an injunction-only statute. Mr. Halpern, perhaps the presiding judge, Roever, will give you a few more minutes, but I want to ask you a couple of questions. Of course, I will. Do you find the Sixth Circuit, since you're suggesting we may have a circuit split here, do you find that similarly flawed the way the Ninth Circuit's analysis is? The Sixth Circuit finding it. I think the Sixth Circuit's decision is flawed for a different reason. So Judge Sutton in Haight v. Thompson rightly recognized that Congress does fundamentally possess the power to impose liability against non-recipients, but he held that the statute was insufficiently clear to authorize that form of relief. But it's important to remember Judge Sutton was writing in the shadow of the Supreme Court's Sosimon decision and without the benefit of Tanzen. Tanzen changes the game. Tanzen deploys all of the tools of traditional statutory construction and teaches us that the statute has only one clear meaning. So I do think there are district courts in the Sixth Circuit that have recognized  Just another question following on Judge Rovner's mention of context in connection with the Tanzen case. The case specifically speaks to the financial loss because of tickets and the like. Is that just factual noting by the Supreme Court or should that have any bearing? Because we don't really have financial loss in this case, do we? We don't, but we have dignitary harm. No, I'm not questioning the potential for damages. I'm just saying we should just disregard that reference to the actual cost. I think that was another reason why the Supreme Court understood that damages were appropriate because it was damages were nothing. And so here we similarly have damages were nothing because Mr. Walker has been released and there's nothing to remediate his injury other than an award of damages. Well, his injuries here are what, pain and suffering? This court has recognized an independent constitutional injury for dignitary harms and I think a violation of RLUPA on egregious facts like these would rise to that level. Yeah, well, how do we assess what damage potential is here? What guidelines would you have us have here? I think we are, unfortunately, we're not at that stage yet because we first need the court to recognize the damages remedy. Well, I'm trying to look down the road a little bit. I think that those are questions that juries grapple with all the time about how to quantify damages in cases involving dignitary harms and I think that a jury would be suited under whatever guidances in this court's precedence to address that question. All right, thank you. I see that my time has expired. Thank you. You will get your rebuttal. Thank you. Of course. All right, thank you. Hello, Ms. Schoenevert. Hello. Good morning and may it please the court. I'm Assistant Attorney General Caitlin Schoenevert and I represent the defendants' appellees. I would first like to note that this court should decline plaintiff's invitation to revisit its decision in Nelson where at summary judgment plaintiff acknowledged that RLUIPA does not include a damages remedy and that his RLUIPA claim was not being pursued. May I interrupt because I'd like to ask you, I'd like to start you off this way. In terms of notice, would it be enough in your view if the statute said, quote, appropriate relief including monetary damages to make clear to a state and its officials that their decision to accept federal funds exposes them to damage rewards in the event that they do not comply with the conditions that are imposed on their use of those funds? And I would really appreciate a yes or no response. If the statute said appropriate damages may include monetary damages, that likely would be sufficient to put a state on notice that Congress intended to allow for monetary damages. However, I would note that there still would remain the question of whether that would be sufficient notice that Congress intended to allow non-recipients of the federal funds to be held liable for a violation of the statute. But I'm wondering then why the appropriate relief language by itself doesn't supply the requisite notice given Tansen's explanation that the ordinary meaning of this phrase does include monetary damages. The reason for that, Your Honor, is because Tansen did not analyze RLUIPA. Tansen was analyzing RFRA. And although RFRA is considered a sister statute to RLUIPA, it was passed pursuant to different congressional powers. And that context is incredibly important. The Supreme Court in interpreting RLUIPA specifically noted when RLUIPA stated it is open-ended and ambiguous about what type of relief it includes, and then went on to say, far from clearly identifying money damages, the word appropriate is inherently context-dependent. And the context here is that RLUIPA was passed pursuant to Congress's spending power. And that distinction is important because the Supreme Court also has explained in Cummings that whether a remedy qualifies as appropriate relief must be informed by the way spending clause statutes operate, that is by conditioning an offer of federal funding on a promise by the recipient not to discriminate at what amounts essentially to a contract between the government and the recipient of funds. So that is the context that is relevant for analyzing RLUIPA. That analysis about spending clause legislation is entirely lacking from Tanzen, and understandably so, because Tanzen analyzed RFRA, which was not passed pursuant to Congress's spending clause powers. Is that relevant to the statutory interpretation question, though, or is that relevant to the authorization under the spending clause itself? It seems like the statutory interpretation, the language is the language, which is identical to the language in Tanzen, and the argument you're making now about the spending clause goes more to Congress's power to pass this type of statute. Your Honor, if I'm understanding your question correctly, I do not believe that a court is prohibited from looking at using statutory interpretation principles generally when analyzing spending clause legislation. In fact, the Supreme Court in Sossaman did that. It started its decision by analyzing RLUIPA, referencing RFRA, giving the full history of how RLUIPA came to be. So it started with that basic background of statutory construction and analysis, but then because RLUIPA was passed pursuant to Congress's spending powers, it turned to the specific question that must be asked when analyzing that type of legislation, and the context there, of course, was whether or not Congress clearly and unambiguously waived state sovereign immunity to monetary damages. And in that context, stated no, it was not ambiguous. But still, the United States Supreme Court in Sossaman, it did. It began with an understanding of RLUIPA, what its purpose was, and how it came to be, but then turned to the relevant question. And indeed, again, at the start of its analysis,  sovereign immunity noted that appropriate relief is open-ended and ambiguous. And in fact, the court in making that determination cited to this court's decision in Nelson. So Sossaman then conclusively answers the question for purposes of RLUIPA whether or not appropriate relief is ambiguous. Indeed, it is. Turning now to the questions. So it's your argument that we have to look at the spending clause in construing the language of the statute, not just in assessing Congress's authority to do this? That's correct, yes. That is correct, Your Honor. And again, turning to the context here. Before you turn to the context here, so if that's correct, how does the necessary and proper clause apply? Well, the necessary and proper clause. Do we look at that for interpretation as well? Your opponent has raised that in their brief, and you didn't really address that particular question. Is that because you don't think it's relevant or something else? Well, certainly as far as the Sabry case, that case did focus nearly exclusively on the necessary and proper clause element and whether or not there was a sufficient connection between the federal funds and the conduct. Right, for the necessary part. Right, exactly. There wasn't a lot of discussion or analysis under Congress's authority under the spending clause to pass the legislation in the first place. The court, of course, acknowledged, stated it felt like it was a proper use, but there wasn't a full analysis of that issue. But before you could get to the question of whether or not the legislation complied with the necessary and proper clause, I do believe it would first be required to determine whether or not Congress had the authority at all to enact that type of legislation. And do we look to the necessary and proper clause to make that determination? No, I do not believe so. The Supreme Court has explained in Cummings, in Pennhurst, as well as in Barnes that the question for determining whether or not this type of remedy is available centers on whether the statute unambiguously expresses that that remedy is available. And then the notice requirement, in addition to requiring that a state may be on notice that a remedy may be available via unambiguous language, but also considering questions about whether that type of remedy would be traditionally available under contract law. That may also provide a basis for a state being on notice that it would be subject to this type of liability or this type of condition. Here, essentially what plaintiffs would be seeking to do would be imposing liability on a non-party to a contract and allowing another non-party to a contract to sue for breaches of that contract. That is not, as far as I'm aware, a traditional understanding of a remedy available under contract law. How do you respond to the argument that was raised in the reply brief, that if we agree with you and agree with your contract analysis and it shouldn't apply here, that there are other contexts and other statutory schemes that are going to be jeopardized, such as Title X? It was raised in the reply brief, so I know I haven't had a chance to respond to it yet. If you're not ready today, then I can ask for something supplemental if we need it. Yes, I would be happy to file a supplemental brief as to that question specifically. I guess I would just reiterate that typically spending clause legislation is understood as allowing damages, remedies against or damages or liability against the funding recipient. And that is typically the way in which spending clause legislation is understood, again, given the nature of the contract between the funding recipient and the federal government. But I'd be happy to submit a supplemental briefing on that specific point, if the court would like. Now, I'm going to go back to the phrase appropriate relief. If we were to decide that that phrase, appropriate relief includes money damages, there really wouldn't be any remaining question that state officials and employees in their personal capacities could be held liable for such relief under the statute, would there be? Look, I realize it's the state that receives the federal funds and not its officials and employees, but doesn't the statute itself make clear that government means it's individual employees and officials? You are correct, Your Honor, that the definition of government in the statute includes government officials. So there is perhaps in that instance, with that definition of government, as well as a specific statement that appropriate relief includes monetary damages, that may be sufficient to unambiguously provide that type of remedy. But the additional question would need to be answered as to whether or not Congress exceeded the scope of its powers under the spending clause and enacting that type of legislation. Now, of course, Illinois employees are indemnified for any damages that are awarded against them for any wrongs they may commit in the course of their employment. How would that factor, if at all, into any analysis here, do you think? Your Honor, I do not believe that would factor in at this point. The fact that Illinois may choose to indemnify its employees in these types of situations is separate and distinct from the question of whether or not Congress had the authority under this spending clause to enact that type of legislation and ask states to impose that, ask states to allow their citizens to be subject to that type of liability without being subject to the contract themselves. Several other circuits who have analyzed this issue have raised these concerns about the possibility that this would very likely exceed Congress's powers under the spending clause. Indeed, you know, there's lots of constitutional considerations that might need to come into play. Specifically, the fact that, you know, as the Supreme Court in South Dakota versus Dole discussed when it comes to our limits on Congress's ability to enact certain laws on the states. And one of those is other constitutional provisions that may prohibit that type of legislation. And to the extent that that type of legislation may infringe on the state's 10th Amendment rights to, you know, to pass laws and legislation concerning the liability of its own citizens. So certainly there are constitutional concerns that would still come into play, even if the statute was crafted so that it was unambiguous that that was Congress's intent. I would just like, going back to Sausman for a moment, if I may, in order, in order for this court to pivot from its understanding in Nelson that the that appropriate relief in RLUIPA was, was ambiguous, that will put it in direct conflict with the Supreme Court's analysis of that phrase in Sausman, which again specifically analyzed appropriate relief in the context of RLUIPA. And before getting to the question of the context there of whether, of whether it expressly waived state sovereign immunity noted that it was open-ended and unambiguous. One further note, I see that my time is up. Didn't Tansin distinguish Sausman on the ground that sovereign immunity is not at issue when one is addressing the liability of state officials, employees in their individual capacities? Your Honor, you are correct. At the end of Tansin, the Supreme Court did make that distinction. But at the start of Tansin, the Supreme Court cited to Sausman and again reiterated that the phrase appropriate relief is open-ended and ambiguous. So it did not in any way undermine the Supreme Court's holding from Sausman. But because look, as I recall, the court treated the meaning of appropriate relief as being context dependent, as we've said, and it found that in the context of individual capacity suits, appropriate relief was not at all ambiguous and plainly inclusive of monetary relief. So having a little bit of difficulty with, you know, the view here. Again, if I may briefly respond to that. Absolutely. You may respond. So you are. We're here. You know, we're here to hear you. Your Honor, you're correct that Tansin did reiterate that appropriate relief is context dependent. The context there was that a different statute, although similar to RLUIPA, but not the same statute, RFRA was passed pursuant to section five of the 14th amendment and RLUIPA was passed pursuant to Congress's spending clause powers. And the Supreme court instructs that the context for understanding what remedies are available in spending clause legislation requires Congress to unambiguously provide that a remedy is available. And that is not present here in RLUIPA. For all those reasons, we ask that this courtroom. Thank you. Thank you so very much. And Mr. Halpern. Thank you. Thank you, your honors. A few quick points. I want to start with why Congress possesses this authority. Talk about the methodology of the spending clause, which goes to your honor, your honors questions, then close with a quick note about the text. So Congress possesses the power to impose liability against employees because of the conjunction of the spending clause and the necessary improper clause. This court did not address that argument in Nelson, but Congress must be able to prevent non-recipients, especially employees from interfering with the execution. Why do we have to look at the necessary and proper? Why can't the analysis just focus on the spending clause and the contractual analysis of the spending clause? You could, but the employee is not the recipient of the federal funds. So as in sobriety, I do think the necessary and proper clause bolsters our argument. I don't, I don't know that we would necessarily need it, but it makes the case easier. And we know that Congress has to have this authority under the necessary and proper clause, because it needs to have a way to get to ensure that the agents of funding recipients are following its conditions. Mr. Howard, perhaps you can help me with the language in Tansin, where it cites, so somehow it says, because the language is quote, open ended on its face, what relief is quote, appropriate. Close. Is quote, inherently context dependent. What are we to make of that language? I think the operative distinction between Tansin and Sosamon was the capacity in which the defendant was sued and not the authority under which Congress enacted RFRA and RUPA. And Tansin makes that clear. It says that damages were inappropriate in Sosamon by virtue of sovereign immunity. But this case is not about sovereign immunity. As your honors recognized at the start of this argument, this is an individual capacity case. And in that context, Tansin makes clear that all of the traditional tools of statutory construction point in the same direction and in favor of damages. Damages are the presumptive remedy when a state official violates federal rights. So if you're forced to choose between appropriate relief, meaning no relief or meaning the presumptive form of relief that has been available for 150 years, I'd respectfully proffer that the only plausible construction is that appropriate relief means damages. Do you analogize this to a 1983 suit? It's not me, your honor. Tansin did that. Tansin said that Congress was clearly pulling on the remedies available under section 1983 when enacted RFRA and RUPA's language is identical. So this inherently context dependent, what do you think the court was referring to there? So the words appropriate relief literally mean proper. To determine whether damages are proper, you have to look at- No, I understand proper, but what is inherently context dependent? That gets me back to this factual aspect. Why is there a site to that language? I think that Tansin was squaring its holding with Sosomon and it was squaring its holding by observing that individual capacity suits are fundamentally different from suits against the sovereign. Those are different contexts and while damages are inappropriate against the sovereign, they are appropriate against state officers in their individual capacity. And if I could just add one point- Absolutely. Yes, your honor. You may, absolutely. Go ahead. Sure. So on the question of whether Congress possesses this authority, so there is SABRI, which we think ends the case, but there's also Oklahoma versus U.S. Civil Service Commission where the Supreme Court upheld the Hatch Act's removal provision against an objection by the state that would violate federalism principles for the federal government to demand that state officials be fired because, of course, they're not recipients of the funds. But the Supreme Court said that that was an appropriate exercise of Congress's prerogatives under the spending clause. And while Rust versus Sullivan is not a spending clause case, the operative principles in that case, that the employees could not complain about the limitations in Title X programs, applies equally here. Because in Rust, the court said they signed up for that scheme, they knew what they were getting themselves into, and their constitutional objections vanished when they knowingly consent to employment with a funding recipient. That exact logic applies here, and it shows that this form of relief is not remotely remarkable. State officials have been held accountable when they violate federal rights for the last 150 years, and we respectfully suggest that they should be held accountable here. We'd ask the court to vacate or reverse. Mr. Halpern, you were appointed, were you not? We were not appointed, Your Honor, but we are representing Mr. Walker Pro Bono. All right. Well, that's even better than being appointed, isn't it? Anyway, we certainly want to thank you for, you know, your vigorous advocacy, and we want to thank the Amici for their helpful work in this case. And as always, we thank the government, Ms. Chenevert, for her fine work. So, thank you, is what I'm trying to say, and the case will be taken under advisement.